Thank you, Your Honor. May it please the Court, Matt Gregory on behalf of Plaintiff Dwayne Bearchild. I'd like to reserve four minutes for rebuttal, please. I'll talk first about the first major issue on appeal, which is the Federal Rule of Evidence 415 issue. Slow down a little bit. Thank you, Your Honor. We'll catch you better. Thank you. Rules 413 through 415 reflect a legislative choice that Congress made, which is that in cases such as this one, and also in criminal prosecutions, evidence of a defendant's other sexual assaults ordinarily should be admitted because it is highly probative of the question whether a defendant committed a specific sexual assault. To effectuate that legislative choice, this Court has announced a clear test and has required district courts to apply that test on the record. That has been the law for 20 years. District courts know this rule. They regularly apply it with no problems. In this case, however, the district court applied a different test in excluding Rule 415 evidence that Mr. Bearchild tried to offer. Instead, he excluded evidence because it did not relate to Mr. Bearchild himself. Well, there was... So, how many complaints did come in? There was an analysis that went on because, obviously, the first trial, it was sent back, and I think in a published opinion, and it said how the jury should be instructed, which the jury was then to be told about that the searches have to be in a sexual manner and for sexual gratification or humiliation, and so it got sent back. So, we had his first trial. That was reversed, so this is his second trial, and the court did go... The court did allow a number of other incidents in, exactly how many were allowed in, and then, I think, two were not, correct? Six PREA reports were allowed in, and Officer Meeks also testified generally about her perceptions of Sergeant Pasha but did not... Was not allowed to talk about a specific incident, and I think this is important. We're not here saying every PREA report needed to come in. Also, 14 internal prison reports were admitted, but not only the six witnesses. So there were six PREA reports, exhibits, that were admitted. I'm not sure where Your Honor is getting the 14 number. I'm looking at ER 17886. There were 14 internal prison reports regarding sexual assault allegations arising from defendants' pat-down searches of other inmates who were... So, not only six witnesses, but 14 reports. So, I believe Your Honor is referring to the in limine order. Six reports were actually admitted at trial, and then two of the reports that we're talking about here today were admitted in that preliminary order but then excluded at trial. So, there were more reports that were admitted. We're not talking about all of them here. Not all of them were even offered at trial. And the reason these two reports mattered is they were different in kind qualitatively from anything that the jury did here. And specifically, they were necessary to respond to Mr. Pasha's theory of these PREA reports, all of these prisoners' allegations. So, the two reports that we're talking about, exhibits 41 and 104, were directly responsive to an argument Mr. Pasha made at opening where he told the jury none of these reports had been substantiated after investigation. Exhibits 41 and 104, 104 in particular, shows that a prison investigator did initially substantiate an inmate's allegation of sexual assault and actually compared that sexual assault directly to the alleged assault of Mr. Baerchild himself because the prison investigator was testifying at that very week at the same trial. Nothing the jury heard was anything like that. The jury heard just allegations from inmates, did not hear that any of them had actually been initially substantiated to be correct. And that's why this error is prejudicial. That's why it's unlike the other reports, a few of which were excluded that we're not talking about. Okay, but really the issue is where the search is, it's everyone, Mr. Pasha acted, your jury instruction tone says that Mr. Baerchild has to show by the preponderance of the evidence that Mr. Pasha acted without penological justification, meaning that his conduct exceeded the scope of what was required to satisfy whatever institutional concerns justified the initiation of the pat search. Then you have the standard that it has to be of a sexual nature, gratification, or to be humiliating, degrading, or demeaning. So one of the reports that the court didn't let in, whatever someone else thinks about the conduct, I think the court felt that there were some internal beefs in the institution about how he handled things or not. The conduct is pretty undisputed as to how he does the searches. Some people think that's okay, other institutionally they say that, and the court didn't want to spin out into a whole other institutional trial about whether this is okay. So it seems to me, under any circumstance, that you have to, whether the search is institutionally sanctioned or not, isn't really the issue. You have to be able to show that it's sexual manner of it, or the humiliation manner, and the jury was instructed of that, and I don't really know how the reports that were excluded would have automatically would have shown that. It exhibits 41 and 104, and 104 in particular talk about Pasha's purpose, and Mr. Sheehan, the investigator, is troubled by what he sees on the video, and troubled that it's so similar to what happened to Mr. Behrschaft himself. So this gets directly at his purpose, it gets directly at what the prison specialist thought about his purpose, which of course... Well, what does it matter what that person thought? It matters what the jury thinks and what his conduct was. And so the jury definitely knows that a lot of people don't agree with his extensive searches. I mean, the cupping, the swipe of the back area, and also I guess he pulled his waistband out, too. But it's not really... You still have to show that... So they hear all of that conduct, they hear witnesses that don't really... They don't really agree with it. But you still have to... That it's for sexual gratification or humiliating or degrading, the jury's got to decide based on what they see. So the fact that someone else thinks, I don't like it, what is that? To be clear, Investigator Sheehan did not say he didn't like it. He substantiated an allegation that it was sexual assault, in part because of what he concluded Mr. Pasha's purpose was. Of course, ultimately the question of purpose was for the jury to decide, but they needed to see all of the evidence that was relevant to that question. And we needed to be able to respond to Mr. Pasha's arguments on this point. I'll just walk you through a few examples. So just because someone else opines on the ultimate question, that's the type of thing that we specifically often keep out. It's up to the jury. The conduct, yes, and that other people complained and all of that. But the fact that if that guy had been on the jury, that he would have come to a different conclusion. So I think this gets directly to why Congress enacted Rule 415. Questions of intent, questions of purpose are very difficult to approve in a sexual assault case. For that reason, Congress decided that district courts ordinarily should admit evidence of what a defendant did on other occasions, which goes directly to this question of why was he doing it to Mr. Bairdschild himself. Again, Exhibit 104, directly probative on that point. And more fundamentally, this court has required district courts to apply a specific test on the record in making that determination, and you simply don't have that record here. Your Honor, I brought up the jury. What's the difference between the excluded evidence and the evidence that was admitted? The excluded evidence shows that on a specific occasion in 2017, two things. First, the prison  So it's his conclusion as to the ultimate fact, that the jury was to decide. Correct, which is the case in every Rule 415 case. Often these are convictions, etc. being introduced to show what someone else found about the defendant's conduct. That's classic Rule 415 evidence. But I'd like to make sure I understand your argument. As I understand it, the evidence that was excluded was evidence that someone had found that the charges were founded, had substance. And you wanted that in in order to counter Pasha's argument that they were all found to be unfounded. Is that correct? Correct. Both at opening and at closing, Mr. Pasha told the jury that although there had been many allegations, none had been substantiated. Mr. Sheehan himself testified that he could not remember any being substantiated. He also testified that he was not involved in any sort of cover-up. Again, Exhibits 41 and 104 directly responsive to these arguments. They showed that prison management intervened in defense of Pasha, tried to change the outcome of an investigation. Okay, so help me out. Did the district court give a reason for excluding that evidence? The district court gave two reasons, as I understand the record. The first is that it was not about Mr. Baerchild himself. Of course, that's not what Rule 415 says. The second reason was what Your Honor mentioned about this kind of sideshow into the investigation process, other people other than Mr. Pasha. But that's not the test. That's not the test in Blindone, from Lemay, et cetera, that this court has required district courts to apply. And second, it doesn't speak to the exhibits themselves. So perhaps the district judge could have... Do you have to show that the district judge abused his discretion? Not on these facts, Your Honor, because... You say so as a matter of law it comes in. No, that's not what we're saying. So we're saying that the district court, as a matter of law, had to apply the correct legal test to the question whether it comes in. And because you have no record of that here, there is no abuse of discretion standard to that threshold legal question. So you're saying we send it back for still another trial? Correct. I think that's the proper remedy here. At minimum, you would send it back for the district court to apply the correct test on the record, which is exactly what this court did in the Blindone case. And that's what the Supreme Court said should ordinarily be the remedy in a case like this one in the Sprint case. I want to just shift to this problem with the jury's verdict form briefly, if I may, because Your Honor did bring it up. I agree that the core question in this case, as you mentioned in your first opinion in the first case, and was common ground among the panel, the core question here is about Mr. Posh's purpose. Why is he doing these things? Is it a good faith effort to find contraband? Or instead, is it a bad faith effort to humiliate an inmate by touching his genitals, forcing him to expose himself? The jury was told to focus only on whether he acts with a legitimate penological purpose, which, of course, is always going to be true in one of these cases. The jury was told to answer, to return a verdict for Posh, even if it believed that he did all these things for the express purpose of sexually humiliating Mr. Baerchild. Respectfully, that is not what this court held in Baerchild 1. It's impossible to reconcile with what all three members of the court agreed and what the parties agreed on remand. So what, okay. Do you want to save the balance of your time for rebuttal? I would. Thank you. Okay. Thank you. We'll hear from the government. Good morning. Good morning, Your Honors, and may it please the court. My name is Kirsten Madsen. I represent Sergeant Larry Pasha on this appeal. We ask that you affirm the now second unanimous jury verdict in his favor and put an end to this case. So why don't you just jump to that Mr. Pasha's attorney states that the excluded evidence was different. What's your response to Mr. Pasha's assertion that the excluded evidence is different, or to Mr. Baerchild's assertion that the excluded evidence is different from the evidence that was admitted? So first, with regard to the 2013 report, that was the one that occurred a week after Mr. Baerchild's search. There was testimony from Ms. Meeks live at trial about her concerns about what she observed. From the defense's perspective, that was frankly more damaging than there being a date certain report. What she testified was that in her view, she saw between 10 and 100 searches. And on every one of those occasions, Pasha engaged in the conduct that she reported the week following Mr. Baerchild's search. She reported it related to a different inmate. So she testified to the substance other than the date that the search occurred. What she testified to is that this was occurring basically throughout the fall of 2013, including in November, including on a specific day. So all of those facts are in the record. So the evidence that they're saying was excluded was the report of her interview, which was frankly cumulative. With regard to the 2017 events, the excluded evidence had to do with, as I think you characterized it, a dispute among some of the officers. And that issue was simply not relevant to the question in front of the jury, what other people thought or what other people did during the investigative process, which Mr. Pasha had no involvement in whatsoever, was simply not relevant, right? So the question under 413, excuse me, 415, is, right, there's that three-part query about is the defendant accused of a crime, a sex crime in this case, are the allegations of prior assault, and are they relevant? The relevance is generally agreed to be the propensity to commit a crime, right? It's the propensity. But there's no relevance to what other people were doing during an investigation to whether Sergeant Pasha engaged in specific conduct. And the plaintiff was allowed to question extensively Nancy Sharkey with regard to her opinions and her views as the subject matter expert on the 2017 report. They asked her a number of questions, all of which her testimony was consistent with what she reported to the investigator when she was asked to review it as the expert. And what did she say? She said that he was, that he put his, I'm trying to remember, she said they trained to enter the groin area with the hand at the top and then go down, whereas Sergeant Pasha went in from the bottom and then up and then back down. And Sergeant Pasha testified that he used that technique because in his experience, if he just went straight in with his hand, there was some possibility that he might jostle the inmate's harm. So did, was there evidence that people disagreed with the way that he did his searches? Certainly there was. And this contention that the defense was introducing or was arguing about the findings, it's just not accurate. The plaintiff's opening statement made the point that there had been multiple complaints and that the complaints, all of them, had either been about that. And all the defense was doing in opening was making three sentences in response to that, acknowledging that statement, saying it's true. There have been complaints. It's true. They haven't been substantiated, but other people have said that what Sergeant Pasha was doing was not inappropriate. It was just simply signposting and restating what the plaintiff had already said. It, that was not the thrust of the defense case. Rather, it was the plaintiffs that returned again and again and again to the conclusions, to the investigations, in an attempt to undermine what, sorry, yes, your honor. Judge Schroeder, did you have a question? Yeah, I understand your point that the investigators' views are not really relevant, but some of these reports came in, and one that the appellant thinks important did not. And I'm wondering, did the, was the reason that the district court gave for excluding it the same as the reasons that you're giving now? Because it doesn't seem to be quite correlated. Yeah, so the argument on that point took place during an offer of proof at the end of the second day trial. The court was asking, what is the probative value of this? Like, was asking the plaintiff to explain that. And the offered probative value from the plaintiff was that there was an implication that because Patrick Sheehan, who was the PREA coordinator, had appointed Lieutenant Blaz in 2013 to conduct this investigation of Mr. Bairchild's complaint, that that suggestion was made to Mr. Sheehan. You might want to check with Tom Blaz. Tom Blaz was also a former retired police chief. I think Mr. Sheehan testified it was a no-brainer with his vast investigative experience that he be assigned to this case. Then in, fast forward four years, in 2017, there is evidence that Patrick Sheehan was recording his interactions with A.W. Wood, which he felt were inappropriate. He felt that A.W. Wood was pressuring him. He recorded each of those instances. He reported them to the warden. He asked for ways to go around A.W. Wood, all of which were granted. And so the argument was there that those two things, that he should, excuse me, that he should have been allowed to argue that because there was documented attempted to influence in 2017, that that led to an implication that in 2013 there may have also been potential influence. And the court said that's pretty thin probative value and it's just a bridge too far. Well, didn't the court say something about, I don't want to go into a mini-trial over their dispute here or people not agreeing on this? Correct. Did the court say something about, if it's thin probative, but I'm also concerned about having this whole thing spin out of control because I'm admitting these other instances? Right. So the exchange that you're referring to took place earlier that morning on Tuesday. So almost all of the trial day on Tuesday was spent exploring this 415 evidence and these other complaints against Sergeant Pasha. So earlier in the day, the plaintiff's counsel had indicated that he wanted to get into the investigative issues. I think the specific statement was the effect on the investigator and there was another comment, which I can't remember off the top of my head. The court said, we're not going to get into that. And in fact, their own expert had just testified that the Montana Department of Corrections had a well-respected investigations department and it had heard of no issues involving Montana DOC, which was, he watches for those issues. This was gratuitously offered. This wasn't like a cross-exam answer. He said that in response to questions from Mr. Barechild's counsel. And the court said, the investigative process is not what we're going to get into. We're not going to do that all day long. Now there was this issue with this, the court called it a snit amongst the officers. That's documented in the 2017 report. He said, that's irrelevant. It's prejudicial. We're not going to go into that. The court. So let's just assume, let's assume, this is hypothetically, that it was error. It still would have to be prejudicial error and affect the outcome. Can you address that? Yeah, we just don't, it's difficult to conclude how this specific, the exclusion of these two things would have been prejudicial error. It would not have changed the outcome of the trial. There was overwhelming evidence that, in fact, we would encourage you to watch, pick any one of the videos. Exhibit 209 is the training video. Exhibit 210A is a stationary camera. So you could see three officers performing pat searches, one right next to each other. You could see the evidence of Sergeant Pasha doing the same pat search over and over and over and over again. And some officers never searching, for example, above the knee. So his pat searches did stand out, right? That's, I don't think, in dispute. All of the totality of that was in serious disconnect with what Mr. Berthold was arguing, which was that the sexual assault occurred both during the pat search, when there was a brief search of the groin where his hands passed through. He says he goes in through his elbow and then bends his elbow and engages in the stroking and fondling. You can watch that exact maneuver as shown on the training video. And then Mr. Berthold alleges that then after that, after that assault, then Mr. Pasha came around to the front of him while the two of them were face to face and engaged in yet another assault where he reached out, grabbed a hold of his groin and then proceeded to sexually assault him again and then asked him to pull out his waistband. There is just nothing like that in any of this other evidence. And so the totality of it is it's, it's, it's difficult to see how a jury would have found with these two pieces of additional evidence that somehow this was going to be a different outcome. I mean, Mr. Berthold's own testimony contradicted his one eyewitness. He says that the witness, he records the witness on exhibit 90 as being behind him by several feet. Um, and that I heard counsel for Mr. Berthold to say that he wanted the conclusion that it was this person's conclusion that it was a sexual assault to come in. I would remind the court that that was a draft conclusion. The signed final report was that it was unsubstantiated. So it, even, even if it had come in, even if we had admitted the draft report, presumably would have also admitted the final report, Mr. Sheehan would have been allowed to be questioned about why he changed his conclusion. Um, the record reflects that there is a redacted sentence following the changed conclusion from, um, substantiated to unsubstantiated wherein he has consulted with legal counsel, but his, even the draft report says that he's finding, um, uh, he's preliminarily concluded that there's a, been a substantiation based on the fact that Mr. Pasha is going outside of his training. And he's not making that finding based on what your honor pointed to, which is the definition of a sexual assault, which is that he is engaging in sexual contact for the purpose of gratification, humiliation, et cetera. So was the jury in your view properly instructed that they had to find, uh, I think, uh, counsel for Mr. Berthold said that first question about whether the search was, was penological or whatever, that that was wrong. There wasn't an objection to that, right? I'm sorry. There was, there wasn't an objection. There was a, I wouldn't call it an objection that the plaintiff asked that there be, um, that the additional definition be included. And the court said, we're not going to include that. That's why I've cross-referenced the jury instructions, which quote directly from the sports holding in bear child one. So what evidence did nature, uh, and, or that it was done to humiliate what evidence did the jury here or could, uh, I guess be the fact that he, that Pasha does searches different from other people. They could have, and that other people didn't don't think that he should do them that way. They don't choose to do them that way. They could, it would be hard for you to say that it would be the evidence if the jury had come back and found the sexual assault. Yeah. I mean, I think that, you know, the plaintiff's closing, the statement of his counsel was correct. If you believe Mr. Bearchild, then the first question is easy. Yeah. He acted without penological purpose during the search. And again, I think the specific words used are important that the instruction is, um, you know, did he exceed the scope of what, um, of the justification that prompted the search? And the question on the jury form is during that process, right? So not, not in the beginning, but at some point, did he, did he exceed the scope of what was required? Um, it from, from the defense perspective, it is possible that the jury could say that he, um, exceeded the scope. We don't concede that that's what happened. I just, as an intellectual exercise that he exceeded the scope, but that it wasn't sexual in nature. And that is Mr. Bearchild's claim is not that he exceeded the scope in some other way, not that he exceeded the scope in some de minimis way, but very specifically that he did so in a sexual manner. And his allegations evolve, frankly, a brazen sexual assault, if they are to be believed. And there's no way for the jury following the instructions, which say that sexual assault has no legitimate penological purpose that is undisputed to conclude that if you believe Mr. Bearchild, of course you go right past the first question. You say, of course he exceeded the scope. And then you answer whether it was sexual in nature. Does that make sense? I see you nodding along, but no, no, I, no, I understand what you're saying. Okay. So do either of my colleagues have any additional questions? No. Okay. We don't appear to. So if you want to wrap up, you're free to use the balance of your time. Thank you, Your Honor. I would just ask that you affirm this is the second time that this case has gone to trial. Mr. Bearchild's interests were well represented. This case was conducted in front of an experienced trial judge who'd had this case from the very beginning. And we don't believe that there was any error, either instructional or in the discretionary evidentiary rulings. Thank you. Thank you. Oh, also, I just would also like to thank Pro Bono from the perspective of the other side. It does bring an enormous assistance to the case. Thank you. Thank you, Your Honor. Just a few quick points. So first, I just want to clean up the record a little bit. So this testimony that Officer Meeks gave, that was about a different incident than Exhibits 41 and 104, which is what I talked about earlier. Exhibits 41 and 104 are about the 2017 incident. Meeks did not testify about that one. That was the only evidence that would have told the jury about this other incident, which was similar to what happened to Mr. Bearchild, that the prison investigator did initially substantiate. On this point of nothing in this trial that could have came in would have supported Mr. Bearchild's story, again, Exhibits 41 and 104 actually say the opposite. Those incidents, the prison investigator correlates directly to what happened to Mr. Bearchild. He says, this is similar to what I in the Bearchild case, and then I witnessed this on the video, and that's what he found concerning about Mr. Posh's behavior. On this question of what the test is under Rules 413 through 415, I don't think it's any secret that these rules go against judges' ordinary instincts. They allow propensity evidence when normally every judge's instinct is don't allow it, it's prejudicial unfairly. That is exactly why this court requires district courts to apply the test on the record, which simply did not happen here. We did object in this sidebar, this key sidebar after investigator Sheehan's testimony. We objected specifically on the ground that Mr. Pasha had told the jury none of these many incidents had ever been substantiated. This left the jury with two pictures of all of these other allegations. One is the prisoners are already making it up. They're weaponizing Priya as Officer Zuber testified for Mr. Pasha, or something is actually going on here. Mr. Pasha is doing this for an improper purpose. The jury was entitled to be the decision maker there, and Mr. Bairchild was entitled to present his version of the story. He simply wasn't able to do so. He was left with allegations and innuendo, but did not get the key evidence that would have flipped the script, would have shown what Mr. Pasha said at opening, at closing, what Mr. Sheehan testified to, to be false. On this issue of the verdict form, I don't think the instructions cure the error. We did object specifically to the verdict form because it did not make clear that sexual assault never serves a legitimate penological purpose. That is encompassed in the without exceeding the scope language, which the district court left off the form. That was the basis of our objections. The reason the instructions don't cure this error is it refers the jury to the entire basket of instructions, F10, F11. Doesn't refer them to anything specific. Question two, which is about Mr. Pasha's purpose, then refers the jury to those very same instructions. The jury ends up asking itself, as any reasonable juror would, what am I supposed to do with this? It focuses back on the question on the form, says stop at legitimate penological purpose, don't ask yourself. I'm having a hard time with, and I did a lot of jury trials as a lawyer, like 70, and I was sat as a trial judge, with I'm having a hard time thinking that if the jury believed that Pasha did anything for sexual gratification or for humiliation, whatever, based on the instructions given as a whole, I'm having a hard time that the jury would have come back against your client. I'm just having a really hard time with that because really everyone, the whole focus was on what Pasha did to Baerchild, which really wasn't terribly disputed between the two of them. It's just what was his intent and other people, it shows that he did it different than other people, and you still, if they didn't believe that he had that intent, I'm having a hard time seeing how, or if they did believe he had that intent, I think they would have slammed Pasha in a hot second. Two responses, Your Honor, if I may, I see I'm out of time. So the first response is, of course, this is exactly why it's so important that the jury heard that a prison investigator had substantiated sexual assault because the jury didn't get that core evidence that rebutted Pasha's theory of what all these other prior reports, what was going on there. The jury didn't hear our side of the story and therefore was left with a misleading picture of the evidence. Second point, I do think we assume juries follow instructions, and these instructions and the form told the jury to not consider Mr. Pasha's sexual manner, whether he was doing this for sexual humiliation, in answering question one. And of course, question one without that is very easy to answer because a prison guard in a prison setting always has a legitimate penological objective to search an inmate, even intrusively, even in ways that become a sexual assault, when he does it in bad faith. I thank Your Honor very much. Unless anyone has further questions. All right, thank you both for your arguments in this matter. This matter will stand submitted. The court is going to take a brief 10-minute recess and then we'll resume and hear the last two cases on the calendar. Thank you.
judges: SCHROEDER, CALLAHAN, BEA